# FOR PUBLICATION

FILED & ENTERED

MAR 06 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY beauchamDEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>IMAGINE FULFILLMENT SERVICES, LLC,<br><br>Debtor.<br>_____<br>IMAGINE FULFILLMENT SERVICES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>DC MEDIA CAPITAL, LLC,<br><br>Defendant. | Case No. 2:12-bk-20544-WB<br>Adversary Case No. 2:12-ap-01514-WB<br><br>CHAPTER 11<br><br>**MEMORANDUM OF DECISION RE:<br>(1) PLAINTIFF IMAGINE FULFILLMENT SERVICES, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF FACTS, AND<br>(2) DEFENDANT DC MEDIA CAPITAL, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO SECOND AND FIFTH AFFIRMATIVE DEFENSES**<br><br>Date: November 5, 2012<br>Time: 10:00 a.m.<br>Courtroom: 1375 |

Before the Court are (1) Plaintiff Imagine Fulfillment Services, LLC's ("Plaintiff" or "IFS") Motion for Partial Summary Judgment, or in the Alternative, Summary Adjudication of Facts ("IFS' Motion") and (2) Defendant DC Media Capital LLC's ("Defendant" or "DC Media") Motion for Partial Summary Judgment as to Second and Fifth Affirmative Defenses

("DC Media's Motion").  IFS seeks summary judgment that three prepetition transfers to DC Media are avoidable preferences under section 547(b).[1]  DC Media seeks summary judgment that the transfers are not avoidable because the defenses set forth in section 547(c)(2) and section 547(c)(9) apply.

A hearing was held on November 5, 2012, at 10:00 a.m., at which time the Court heard oral argument and took this matter under submission.  The Court, having considered the pleadings, evidentiary record, and the oral arguments of counsel, finds and concludes as follows:

I.    STATEMENT OF FACTS

A.    Undisputed Facts

The Court finds the following facts to be undisputed.

IFS filed a voluntary chapter 11 petition on March 25, 2012 (the "Petition Date").

Prior to the Petition Date, a dispute arose between IFS and DC Media.  DC Media sued IFS in Los Angeles Superior Court (Case No. BC408418) for, among other things, breach of contract and damages (the "State Court Action").  On December 16, 2011, the Superior Court entered judgment in the State Court Action in favor of DC Media and against IFS for, among other things, breach of contract and damages, in the amount of $2,356,546.00, plus prejudgment interest, attorneys' fees and costs (the "Judgment").  The Judgment includes pre-judgment interest of $967,776, attorneys' fees of $541,946.50 and costs of $29,556.42 for a total of $3,997,223.

On December 27, 2011, DC Media filed a Notice of Judgment Lien with the California Secretary of State.

On January 24, 2012, DC Media recorded an Abstract of Judgment with the Los Angeles County Recorder.

On February 7, 2012, IFS filed a notice of appeal of the Judgment.  This appeal was pending as of the Petition Date and remains pending.

On March 5, 2012, DC Media caused the Los Angeles County Sheriff's Office

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

1    ("Sheriff") to levy upon IFS' Wells Fargo bank account.  The Sheriff seized approximately

2    $81,196.00, which the Sheriff continues to hold and has not turned over to DC Media.

3         As of the Petition Date, IFS had not satisfied the Judgment.  DC Media was a creditor of

4    IFS during the period from December 16, 2011, through March 25, 2012.

5         During the period from December 16, 2011 through March 25, 2012 IFS did not own real

6    property.

7    B.   Facts related to IFS' Solvency

8         Both IFS and DC Media have provided evidence regarding IFS' solvency during the 90

9    days before the Petition Date.  IFS introduced evidence showing the value of its assets and

10   liabilities as stated on its balance sheet at the time of each of the transfers at issue.

| Date | Value of Assets and Liabilities |
|------|--------------------------------|
| December 27, 2011 | Assets  $472,217<br>Liabilities  $780,315 |
| December 31, 2011 | Assets  $683,802<br>Liabilities  $871,900 |
| January 24, 2012 | Assets  $596,969<br>Liabilities  $941,968 |
| March 5, 2012 | Assets  $653,929<br>Liabilities  $951,770 |
| March 31, 2012 | Assets  $908,227<br>Liabilities  $1,176,256 |

     In addition, IFS contends that the Judgment is a liability that, when added to its balance

sheet liabilities, establishes its insolvency at each of the relevant times.  DC Media introduced an

appraisal of certain of IFS' assets.  DC Media also introduced evidence in the form of IFS'

business records to show that IFS' cash in its checking account as of December 27, 2011 was

$231,965 instead of negative $65,151, as stated on IFS' balance sheet and that its accounts

receivable as of December 27, 2011 was $413,650 instead of $394,779 as provided in the

balance sheet.  This results in an asset value of IFS' assets as of December 27, 2011 of $788,204,

according to DC Media.  In addition, DC Media presented evidence that IFS overstated its

accounts payable by $24,291 and its customer depositions by $29,191 and asserts that IFS'

accrued state income tax liabilities by $12,590 should not be included in the calculation of IFS'

liabilities.  From this, DC Media asserts that IFS was solvent on December 27, 2011 and that a

1    triable issue of material fact exists with respect to IFS' solvency.

2    II.    DISCUSSION

3    This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(b) and

4    1334(b).  This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O).

5    Venue is proper in this Court.  28 U.S.C. § 1409(a).

6    A.    Summary Judgment Standard

7    Rule 7056 states that Civil Rule 56 applies in adversary proceedings.  Under Civil

8    Rule 56(c), summary judgment is warranted where "the pleadings, the discovery and disclosure

9    materials on file, and any affidavits show that there is no genuine issue as to any material fact

10   and that the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

11   The court may grant summary judgment on all or part of the claim.  Fed. R. Civ. P. 56(a)-(b).

12   To prevail on a summary judgment motion, the moving party must show that there are no

13   triable issues of material fact as to matters on which it has the burden of proof at trial.  See

14   Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  On issues where the moving party does not

15   have the burden of proof at trial, the moving party is required to show only that there is an

16   absence of evidence to support the non-moving party's case.  Id.

17   To defeat a summary judgment motion, the non-moving party must affirmatively present

18   specific admissible evidence sufficient to create a genuine issue of material fact for trial.  See

19   Celotex Corp., 477 U.S. at 324.  The non-moving party may not rely solely on its pleadings or

20   conclusory statements. Fed. R. Civ. P. 56(e).  Nor may the non-moving party merely attack or

21   discredit the moving party's evidence.  Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d

22   95, 97 (9th Cir. 1983).

23   B.    The Parties' Contentions

24   IFS seeks summary judgment that (i) the filing of the Notice of Judgment Lien with the

25   California Secretary of State ("Transfer One"), (ii) the recording of the Abstract of Judgment

26   with the Los Angeles County Recorder ("Transfer Two"), and (iii) the Sheriff's levy on IFS bank

27   account ("Transfer Three") are avoidable preferences under section 547(b).  DC Media argues

28   that the Court must deny IFS' Motion because genuine issues of material fact remain as to

1   (1) whether Transfer One was made during the 90-day window, (2) whether IFS was insolvent

2   on the transfer dates, and (3) whether DC Media will receive more from the transfers than it

3   would receive in a hypothetical chapter 7 liquidation.

4          DC Media seeks summary judgment that (1) Transfer One is not avoidable pursuant to

5   section 547(c)(2) because the filing of the Notice of Judgment Lien was made in the ordinary

6   course of business and according to ordinary business terms, and (2) Transfer Two is not

7   avoidable pursuant to section 547(c)(9) because IFS owns no real property, and therefore the

8   Abstract of Judgment is less than the $5,850.00 minimum amount that IFS may recover as a

9   preferential transfer.

10         For the reasons set forth below, the Court will grant summary judgment as to each

11  element of Transfer One, other than the last element, that the transfer allows DC Media to

12  receive more than it would in a hypothetical chapter 7 liquidation.  The Court will deny IFS'

13  Motion with respect to Transfer Two.  The Court will grant summary judgment as to Transfer

14  Three.  The Court will deny DC Media's Motion.

15  C.    IFS is Entitled to Partial Summary Judgment on Transfers One and Three.

16         A trustee or debtor in possession may avoid certain transfers made within 90 days before

17  the bankruptcy filing that would otherwise prefer one or more creditors at the expense of other

18  creditors.  11 U.S.C. § 547(b); In re Ahaza Sys., Inc., 482 F.3d 1118, 1122 (9th Cir. 2007).  To

19  avoid a transfer as preferential, IFS must show all of the following elements:

20      (1)    a transfer;

21      (2)    of the debtor's property or of an interest in the debtor's property;

22      (3)    to or for a creditor's benefit;

23      (4)    on account of an antecedent debt;

24      (5)    made within 90 days prior to filing of the petition (or within one year if the

25          transferee was an insider);

26      (6)    made while the debtor was insolvent;

27      (7)    that allows the creditor to receive more than it would receive in a case under

28          chapter 7 if the transfer had not been made and the creditor received payment as

1     provided in the Code.

2  11 U.S.C § 547(b); see also, In re Flooring Concepts, Inc., 37 B.R. 957, 960 (9th Cir. B.A.P.

3  1984).

4     There is no dispute that Transfer One and Transfer Three are transfers of an interest of

5  IFS in property to or for the benefit of DC Media, a creditor of IFS, on account of the DC Media

6  Judgment, an antecedent debt.  Thus, summary judgment as to these elements is appropriate and

7  the Court will not address those elements in its discussion.

8        1.     IFS is Entitled to Summary Adjudication of Issues as to All Elements of Transfer

9               One Except Whether Transfer One Allowed DC Media to Recover More than It

10              Would in a Hypothetical Liquidation.

11    With respect to Transfer One, the Notice of Judgment Lien, the parties dispute (1) when

12  the transfer was made; (2) whether IFS was insolvent at the time of the transfer; and (3) whether

13  the transfer allows DC Media to receive more than it would receive in a chapter 7 liquidation had

14  the transfer not been made.

15        a.     Transfer One Was Made Within the 90-Day Preference Period.

16    To be avoidable as a preference, a transfer must have occurred during the 90 day

17  preference period applicable to transfers to non-insiders.  11 U.S.C. § 547(b)(4).  IFS has the

18  burden of proof on this element.  11 U.S.C. § 547(g).  A transfer is "made" on the date it "takes

19  effect between the transferor and transferee, if such transfer is perfected at [the time of the

20  transfer] or within 30 days" thereafter.  11 U.S.C. § 547(e)(2).  If a transfer is perfected after this

21  30-day period, the transfer is deemed "made" at the time of perfection.  11 U.S.

22  § 547(e)(2)(B); In re Loken, 175 B.R. 56, 63-64 (9th Cir. B.A.P. 1994).  If a transfer is not

23  perfected as of the petition date, the transfer is deemed to have occurred immediately before the

24  petition date.  11 U.S.C. § 547(e)(2)(C).  A transfer affecting personal property is perfected when

25  a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the

26  transferee.  11 U.S.C. § 547(e)(1)(B).

27    State law controls when a transfer is effective between parties.  McKenzie v. Irving Trust

28  Co., 323 U.S. 365, 370 (1945).  Under California law, a judgment lien on personal property is

created by filing a Notice of Judgment Lien in the office of the Secretary of State. Cal. Civ.
Proc. Code § 697.510(a); Waltrip v. Kimberlin, 164 Cal. App. 4th 517, 529 (2008); Kaichen's
Metal Mart, Inc. v. Ferro Cast Co., 33 Cal. App. 4th 8, 11 (1995). A judgment lien attaches to
business personal property interests owned by the judgment debtor when the judgment lien is
filed, as well as to any lienable property later acquired by the judgment debtor. Cal. Civ. Proc.
Code §§ 697.530(a)-(b). Thus, a judgment lien takes effect on the date a judgment creditor files
its Notice of Judgment Lien with the Secretary of State. Further, under California law, the first
judgment lien to attach prevails over later-filed judgment liens. Cal. Civ. Proc. Code
§ 697.600(a).

Here, it is undisputed that DC Media filed its Notice of Judgment Lien on December 27,
2011. Under California law, the filing of the Notice of Judgment Lien created a judgment lien
that took effect when the notice was filed. Cal. Civ. Proc. Code § 697.510(a). After that date, a
creditor on a simple contract could not obtain a greater lien. Cal. Civ. Proc. Code § 697.600(a).
Accordingly, under section 547(e)(2), Transfer One was made on December 27, 2011, the date
when the transfer took effect and was perfected. This transfer affected all of IFS' personal
property on that date, along with any after-acquired personal property.

DC Media argues that Transfer One cannot be avoided under section 547(e)(3), which
provides that "a transfer is not made until the debtor has acquired rights in the property
transferred." 11 U.S.C. § 547(e)(3). DC Media then identifies accounts receivable in which IFS
acquired rights after the petition date, arguing that Transfer One was not "made" as to these
postpetition transfers until IFS acquired rights in the accounts receivable. DC Media's argument
misses the mark. The issue is when Transfer One—the attachment and perfection of DC Media's
Judgment Lien—was made, not whether assets acquired after the petition date are transfers.
While DC Media's Judgment Lien attaches to IFS after-acquired property, when such property is
acquired does not affect when the Judgment Lien itself was created under California law.

Therefore, because the Judgment Lien was created on December 27, 2011, IFS has
carried its burden of proof that Transfer One was made within the 90-day window of section
547(b)(4).

b.      IFS Was Insolvent When Transfer One Was Made.

For a debtor-in-possession to avoid a preferential transfer, the debtor must have been insolvent at the time the transfer was made.  11 U.S.C. § 547(b)(3).  A debtor is presumed to be insolvent 90 days before the filing of a petition.  11 U.S.C. § 547(f).  To defeat the presumption, the transferee must come forward with substantial evidence of the debtor's solvency at the time the transfer was made.  In that case, the presumption disappears and the debtor must present evidence sufficient to prove insolvency.  In re Sierra Steel, Inc., 96 B.R. 275, 277 (9th Cir. B.A.P. 1989).

A debtor is insolvent where the debtor's debts exceed its assets (excluding exempt assets or assets that have been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors).  11 U.S.C. § 101(32)(A); see also In re Koubourlis, 869 F.2d 1319, 1321 (9th Cir. 1989) (recognizing this definition of insolvency as the "traditional bankruptcy balance sheet test").  A court determines a debtor's insolvency based on "a fair valuation" of the debtor's assets and liabilities, employing a two-step analysis.  Id.  First, the court determines whether the debtor was a "going concern" or "on its deathbed."  In re DAK Indus., Inc., 170 F.3d 1197, 1199 (9th Cir. 1999).  Second, "the court must value the debtor's assets, depending on the status determined in the first part of the inquiry, and apply a simple balance sheet test to determine whether the debtor was solvent."  Id. (citation omitted).  The fair value of assets belonging to a "going concern" debtor is "the fair market price of the debtor's assets as if they had been sold as a unit, in a prudent manner, and within a reasonable time."  Id. at n.3.  In contrast, a fair valuation of a debtor "on its deathbed" is the liquidation value of the debtor's assets.  Id.  Because neither party contends that IFS is on its deathbed, the Court will view IFS as a going concern.  See In re DAK Indus., Inc., 195 B.R. 117, 124-25 (Bankr. C.D. Cal. 1996), aff'd, 170 F.3d 1197 (9th Cir. 1999).

Although courts in this Circuit commonly refer to the insolvency analysis under section 547(b)(3) as a "balance sheet test," the balance sheet book value of a debtor's assets may not always equal the fair market value.  Matter of Lamar Haddox Contractor, Inc., 40 F.3d 118, 121 (5th Cir. 1994) ("[A] fair valuation may not be equivalent to the values assigned on a balance

1    sheet. . . . The fair value of property is not determined by asking how fast or by how much it has

2    been depreciated on the corporate books, but by estimating what the debtor's assets would

3    realize if sold in a prudent manner in current market conditions." (internal quotations and citation

4    omitted)).  Nevertheless, a court may still consider book value as competent evidence from

5    which it may draw inferences about a debtor's insolvency.  In re Roblin Indus., Inc., 78 F.3d 30,

6    36 (2d Cir. 1996) (citation omitted).

7         Because IFS is presumed to be insolvent during the 90 day preference period, DC Media

8    must introduce at least "some evidence [of debtor's solvency] to rebut [this] presumption."  In re

9    Koubourlis, 869 F.2d at 1322.  Here, DC Media challenges IFS' balance sheets as evidence of

10   fair value by presenting some evidence that IFS has undervalued certain assets and overstated

11   certain liabilities on its balance sheet as of December 27, 2011.[2]  This evidence includes:

12   (i) IFS' acknowledged that its schedules provide the acquisition price of, and IFS' own estimates

13   of, the fair market value of its assets; (ii) where IFS was unable to reasonably estimate an asset's

14   fair market value as of December 27, 2011 or where IFS believed the asset had no fair market

15   value as of December 27, 2011, the asset was listed as having a fair market value of $0.01; and

16   (iii) IFS did not retain an appraiser or expert to generate such estimates.  DC Media further

17   challenged IFS' valuation with respect to the amount of cash in IFS' checking account and its

18   accounts receivable balances on the December 27, 2011, introducing evidence to show different

19   balances as of that date.  DC Media also introduced evidence of the appraised value of certain of

20   IFS' personal property assets.[3]  Based on this information, DC Media argues that a correct value

21   of IFS assets is $788,204 as of December 27, 2011.  DC Media also presented evidence that IFS'

22

23   [2] DC Media presented no evidence challenging the value of IFS' assets and liabilities as of the
     dates of Transfer Two and Transfer Three.

24   [3] The Court granted DC Media's request for a continuance of the hearing on this Motion so that
     DC Media's expert, Edward Morris, could appraise IFS' fixed assets as of December 27, 2011.
25   Mr. Morris stated that he did not have access to all of IFS' personal property because IFS was in
     the process of moving its two warehouses.  Mr. Morris also admitted that his report "does not
26   reflect the fair market value of all of the personal property that was owned by [IFS] as of
     December 27, 2011."  (Emphasis in original.)  Mr. Morris further stated that due to IFS' vague
27   property descriptions, he was unsure whether his appraisal included certain personal property
     items.  Regarding the property that he did examine, however, Mr. Morris reports a fair market
28   value between $99,575.00 and $147,250.00.

1    balance sheet liabilities were overstated by approximately $66,000.  As a result, DC Media

2    contends that genuine issues of material fact exist regarding IFS' solvency on December 27,

3    2011.  However, whether a genuine issue of material fact exists depends on whether the full

4    amount of the Judgment is included as a liability in the solvency calculation.  The answer to this

5    question turns on whether the Judgment is a contingent liability.

6         A "debt" is a "liability on a claim."  11 U.S.C. § 101(12).  A "claim" is defined as a "right

7    to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

8    contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

9    11 U.S.C. § 101(5)(A).  The terms "debt" and "claim" are coextensive.  In re Quintana, 107 B.R.

10   234, 237 (9th Cir. B.A.P. 1989), aff'd, 915 F.2d 513 (9th Cir. 1990).  Thus, "contingent

11   liabilities must be included in the computation of total indebtedness."  2 Collier on Bankruptcy

12   ¶ 101.32[5] (16th ed. 2011).  "For purposes of the insolvency test, if there is a contingent asset or

13   contingent liability, that asset or liability must be reduced to its present, or expected value."  Id.

14   at n.94; see Matter of Xonics Photochemical, Inc., 841 F.2d 198, 200 (7th Cir. 1988).  Accord In

15   re Trans World Airlines, Inc., 134 F.3d 188, 197 (3d Cir. 1998), cert. denied, 523 U.S. 1138

16   (1998); F.D.I.C. v. Bell, 106 F.3d 258, 264 (8th Cir. 1997); Covey v. Commercial Nat'l Bank of

17   Peoria, 960 F.2d 657, 660 (7th Cir. 1992); F.D.I.C. v. Municipality of Ponce, 904 F.2d 740, 744

18   (1st Cir. 1990); In re Chase & Sanborn Corp., 904 F.2d 588, 594-95 (11th Cir. 1990); In re Sierra

19   Steel, Inc., supra.  Thus, to value a liability, a court should engage in a two-step analysis:  first,

20   the court must determine whether the liability is contingent, and second, if so, the court should

21   discount the contingent liability to its expected value.

22        Here, DC Media contends that the Judgment is a contingent liability which should be

23   given little value based on IFS' estimation of its chance of success on appeal.  DC Media

24   contends that the Judgment should be valued consistent with the approach of the Seventh Circuit

25   in Xonics, which stated that "[t]o value the contingent liability it is necessary to discount it by

26   the probability that the contingency will occur and the liability become real."  841 F.2d at 200.

27   The Xonics court stated that the value of the contingent liability should be determined as a

28   function of the value of the debtor's assets.  Id.  According to DC Media, using this approach

would yield a value for the Judgment of $7,394.70 (the estimated chance of liability on the

Judgment (10%) multiplied by the net value of IFS' assets ($73,947.00)).  Adding this amount to

IFS' balance sheet liabilities on the date of Transfer One would make the Debtor solvent on that

date, according to DC Media.

Without conceding that the Judgment should be discounted, IFS asserts that if the Court

were to discount the Judgment as a contingent liability, the Court should apply the approach of

Covey, supra, a later Seventh Circuit case that addressed the issue of discounting contingent

liabilities in a fraudulent transfer case under section 548(a).  In Covey, the Seventh Circuit

reiterated that contingent liabilities must be discounted according to the probability that they

might occur; however, it held that such valuation must be performed from the debtor's

perspective.  Id. at 659-61.  The Covey court held that the value of the contingent liability must

be determined as a function of the total amount of the debt and not the net value of the debtor's

assets, noting that if the debtor's assets are used as the multiplicand, the Debtor would never be

considered insolvent.  Id. at 660.  Applying this rationale and using DC Media's estimate of

recovery, IFS states that the value of the contingent Judgment would be $399,722 ($3,997,223

(judgment amount) multiplied by the estimated chance of recovery (10%)).

However, both DC Media and IFS skip the critical first step, a determination of whether

the Judgment is a contingent liability.  The Court cannot reach the issue of the value of the

Judgment as a contingent liability without first determining that the Judgment is contingent.  If

the Judgment is a contingent liability, the Court cannot make this determination on summary

judgment because it requires the Court to weigh evidence in determining the value of the

contingent liability. If the Judgment is not contingent, the full amount of the Judgment must be

included in the insolvency analysis.

As noted above, the Code's definition of "claim" includes a contingent right to payment.

11 U.S.C. § 101(5).  However, the Code does not define the term "contingent."  In re Nicholes,

184 B.R. 82, 88 (9th Cir. B.A.P. 1995). Case law has primarily focused on defining "contingent"

in the context of section 303 (threshold requirements for chapter 7 and 11 involuntary petitions),

section 109(e) (debtor eligibility for chapter 13 relief) and section 502(c) (estimation of claims).

In each of these contexts, courts have held that a claim is not contingent "if all events giving rise to liability occurred prepetition." In re Fostvedt, 823 F.2d 305, 306-07 (9th Cir. 1987) (§ 109(e) case). Accord In re Loya, 123 B.R. 338, 340 (9th Cir. B.A.P. 1991) (§ 109(e) case); In re Dill, 30 B.R. 546, 549 (9th Cir. B.A.P. 1983), aff'd, 731 F.2d 629 (9th Cir. 1984) (§ 303(b)(1) case); In re Mitchell, 255 B.R. 345, 359-60 (Bankr. D. Mass. 2000) (§ 109(e) case); In re Nugent, 254 B.R. 14, 38 (Bankr. D.N.J. 1998) (§ 502(c) case); In re Audre, 202 B.R. 490, 492 (Bankr. S.D. Cal. 1996) (§ 502(c) case); In re Keenan, 201 B.R. 263, 264 (Bankr. S.D. Cal. 1996) (§ 502(c) case).

In the seminal case In re All Media, the bankruptcy court enunciated the "triggering event test" for determining whether the claims of petitioning creditors were non-contingent, thus making such creditors eligible to file an involuntary bankruptcy petition. In re All Media Props., Inc., 5 B.R. 126, 131 (Bankr. S.D. Tex. 1980), aff'd, 646 F.2d 193 (5th Cir. 1981), overruled on other grounds by In re Trusted Net Media Holdings, LLC, 550 F.3d 1035 (11th Cir. 2008). The All Media court examined the authority under the Bankruptcy Act of 1898 on whether a liability was contingent:

> Under [§] 59b of the Act, a claim was not necessarily rendered contingent as to liability merely because it was unmatured. For example, in Matter of Myers, 31 F. Supp. 636 (E.D.N.Y. 1940)[,] the court held that a holder of notes could properly be a petitioning creditor even though some of the notes were not due until after the involuntary petition was filed, because the obligation was "absolutely owing" at the time of the filing. Similarly, in Kay v. Federal Rubber Co., 46 F.2d 64 (3rd Cir. 1930)[,] a holder of trade acceptances which were not payable until after the involuntary petition was filed was considered to be a qualified creditor. Instead, a contingent claim was defined to be "one as to which it remains uncertain, at the time of the filing of the petition in bankruptcy, whether or not the bankrupt will ever become liable to pay it." In re Mullings Clothing Co., 238 F. 58, 67 (2nd Cir. 1916). It was not necessary that a claim be reduced to judgment before it was not contingent as to liability. Rather, the petitioning creditors who were disqualified were those where claims were "open" and "unliquidated" in that they were tort-type claims or quantum meruit claims which required proof as to liability, reasonable value, or damages. Denham v. Shellman Grain Elevator, Inc., 444 F.2d 1376, 1380 (5th Cir. 1971)[;] In re Walton Plywood, 227 F. Supp. 319, 324 (W.D. Wash.1964). Where no additional act or event need have occurred before liability attached, then liability was considered to be non-contingent. In re Trimble Company, 339 F.2d 838, 844 (3rd Cir. 1964).

1   In re All Media, 5 B.R. at 132 (footnote omitted); see also Bankr. Act of 1898, § 59(b), 11

2   U.S.C. (1976 Ed.) § 95(b).  The All Media court held that under section 303, a claim is

3   contingent as to liability if a triggering event is required for the claim to come into existence:

> A claim is contingent as to liability if the debtor's legal duty to pay does
> not come into existence until triggered by the occurrence of a future event
> and such future occurrence was within the actual or presumed
> contemplation of the parties at the time the original relationship of the
> parties was created. . . .  On the other hand, if a legal obligation to pay
> arose at the time of the original relationship, but that obligation is subject
> to being avoided by some future event or occurrence, the claim is not
> contingent as to liability, although it may be disputed as to liability for
> various reasons.

10  Id. at 133 (emphasis added).

11      Numerous cases have applied All Media's "triggering event" definition of contingent

12  liabilities for purposes of section 303 eligibility.  See, e.g., In re Seko Inv., Inc., 156 F.3d 1005,

13  1008 (9th Cir. 1998); In re Smith, 243 B.R. 169, 179 (Bankr. N.D. Ga. 1999); In re Turner, 32

14  B.R. 244, 247 (Bankr. D. Mass. 1983).

15      In addition, courts have applied the "triggering event" test to determine whether a debt is

16  contingent for purposes of chapter 13 eligibility under section 109(e).  Under section 109(e),

> Only an individual with regular income that owes, on the date of the
> filing of the petition, noncontingent, liquidated, unsecured debts of less
> than $360,475 and non-contingent, liquidated secured debts of less than
> $1,081,000 or an individual with regular income and such individual's
> spouse . . . that owe, on the date of the filing of the petition,
> noncontingent, liquidated secured debts of less than $1,081,400 may be a
> debtor under chapter 13 of this title.

22  11 U.S.C. § 109(e).

23      "[A] creditor's claim is not contingent when the 'triggering event' occurred before the

24  filing of the chapter 13 petition."  2 Collier on Bankruptcy ¶ 109.06[2][b] (16th ed. 2011); see

25  also Brockenbrough v. C.I.R., 61 B.R. 685, 686-87 (W.D. Va. 1986) (quoting In re All Media, 5

26  B.R. at 133) (because debtor's tax liability was triggered by his prepetition failure to pay taxes,

27  that liability was no longer contingent as of the petition date).

28      Furthermore, judgments are generally considered to be non-contingent liabilities for

1   purposes of determining eligibility to file an involuntary petition or a chapter 13 petition.  See,

2   e.g., In re Pan Am Corp., 166 B.R. 538, 545 (S.D.N.Y. 1993); In re Drexler Assocs., Inc., 57

3   B.R. 312, 314 (Bankr. S.D.N.Y. 1986); In re Drexler, 56 B.R. 960, 967 (Bankr. S.D.N.Y. 1986);

4   In re Arker, 6 B.R. 632, 635 (Bankr. E.D.N.Y. 1980).  A judgment establishing liability against a

5   debtor, entered prepetition, is not a contingent debt for purposes of determining eligibility under

6   section 109(e).  See In re Mitchell, 255 B.R. at 359; In re Albano, 55 B.R. 363, 369 (N.D. Ill.

7   1985) (rejecting argument that judgment was contingent under section 109(e) while appeal was

8   pending; operation of district court judgment not suspended pending appeal); In re McMonagle,

9   30 B.R. 899, 903 (Bankr. D.S.D. 1983) (debtor's dispute of state court judgments did not make

10  the judgments contingent liabilities under section 109(e)); In re Correa, 15 B.R. 195, 197 (Bankr.

11  D. Md. 1981) ("Because the Circuit Court entered judgment before the Debtor filed her [chapter

12  13] petition, even if the debt were contingent originally, it is contingent no longer.").

13          In In re Mitchell, supra, the bankruptcy court for the District of Massachusetts considered

14  whether a California state court judgment that was on appeal was a contingent debt for

15  determining the debtors' eligibility for chapter 13 relief under section 109(e).  255 B.R. at 358-

16  61.  While recognizing that under California law, a judgment on appeal was not final for res

17  judicata purposes until the appeal was concluded, the bankruptcy court nevertheless held that the

18  California judgment against the chapter 13 debtors was not a contingent debt.  Id. at 359-60.  The

19  court held that the liability was not contingent because all events giving rise to debtors' liability

20  to the judgment creditor occurred prior to the filing of debtors' petition, even though the

21  judgment was on appeal as of the filing date.  Id.  Accord Matter of Redburn, 193 B.R. 249

22  (Bankr. W.D. Mich. 1996); In re Johnson, 191 B.R. 184 (Bankr. D. Ariz. 1996).  In reaching its

23  decision the Mitchell court relied on In re Keenan, 201 B.R. 263 (Bankr. S.D. Cal. 1996), a

24  bankruptcy court decision from the Southern District of California that addressed the same issue

25  in the context of claim estimation under section 502(c).  Section 502(c) provides that a court

26  shall estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the

27  case may be, would unduly delay the administration of the case."  11 U.S.C. § 502(c)(1).

28          In Keenan, a chapter 11 debtor asked the court to estimate a judgment creditor's claim

1  that arose from a prepetition state court judgment.  201 B.R. at 264.  The debtor argued that

2  because California judgments on appeal have no preclusive effect, the judgment creditor's claim

3  was contingent and therefore the court was obligated to estimate the claim pursuant to

4  section 502(c).  Id.  Rejectinh the debtor's argument, the court held that the judgment was not a

5  contingent claim because all events giving rise to liability occurred prior to the filing of the

6  bankruptcy petition.  Id.  The court further held that even though the judgment on appeal had no

7  preclusive effect, "the inapplicability of issue preclusion does not make a claim based upon a

8  trial court verdict either contingent or unliquidated."  Id.

9      Further, a dispute over a claim does not render the claim contingent.  E.g., In re McNeil,

10  13 B.R. 434, 436 (E.D. Tenn. 1981); In re Pennypacker, 115 B.R. 504, 507 (Bankr. E.D. Pa.

11  1990) (rejecting argument that all disputed debts are contingent); In re Elsub Corp., 70 B.R. 797,

12  811 (Bankr. D.N.J. 1987); In re Albano, 55 B.R. at 368 ("Merely because a [chapter 13] debtor

13  disputes a debt, or has defenses or counterclaims, that does not render that debt contingent or

14  unliquidated."); In re Lambert, 43 B.R. 913, 923 (Bankr. D. Utah 1984) (same); In re N. Cnty.

15  Chrysler-Plymouth, Inc., 13 B.R. 393, 399 (Bankr. W.D. Mo. 1981); Matter of Skye Mktg.

16  Corp., 11 B.R. 891, 898 (Bankr. E.D.N.Y. 1981).[4]

17      Few preference cases have addressed the issue of whether a claim is contingent for

18  purposes of determining the debtor's solvency.  Indeed, in Xonics and Sierra Steel, cases cited by

19  DC Media, the issue was not whether the debt at issue was contingent but how to account for the

20  contingent liability in determining solvency.  See Xonics Photochemical, Inc., 841 F.2d at 200;

21  In re Sierra Steel, Inc., 96 B.R. at 279.  In In re Attaway, the bankruptcy court for the District of

22  Oregon addressed the definition of a contingent liability in the section 547(b) context. 180 B.R.

23  274 (Bankr. D. Or. 1995).  In that case, the court noted that "[T]he rule is clear that a contingent

24  debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening

25  of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'"  Id. at

26

27  [4] On February 27, 2013, the Ninth Circuit issued its opinion in Georges Marciano v. Steven
   Chapnick, et al., holding that a judgment that was not stayed pending appeal is not disputed for
28  purposes of determining petitioning creditors' eligibility to file an involuntary petition under
   section 303.  ___ F.3d ____, 2013 WL 703157 (9th Cir. Feb. 27, 2013).

1  278 (quoting In re Fostvedt, 823 F.2d at 306).  Another case holds that "contingent liabilities

2  must be limited to costs arising from foreseeable events that might occur while the debtor

3  remains a going concern," impliedly espousing the "triggering event" definition of contingent

4  liabilities from All Media. In re Trans World Airlines, Inc., 134 F.3d 188, 198 (3d Cir. 1998); see

5  also In re Lids Corp., 281 B.R. 535, 546 (Bankr. D. Del. 2002).

6         These cases demonstrate that the "triggering event" test has been widely applied to

7  determine whether a debt is contingent.  Further, the Ninth Circuit Court of Appeal adopted this

8  test in In re Fostvedt, with respect to contingent liability for eligibility under section 109(e).  The

9  rules of statutory construction provide that a term should be construed consistently throughout a

10  statute. See Yamaguchi v. State Farm Mut. Auto. Ins. Co., 706 F.2d 940, 947 (9th Cir. 1983).

11  For these reasons, the Court will adopt this test to determine whether the Judgment is a

12  contingent liability for purposes of section 547.  Thus, because the events giving rise to the

13  Judgment occurred pre-petition and prior to each of the transfers at issue, the Judgment is not a

14  contingent debt and was not contingent as of any of the relevant transfers.  As a result, the full

15  amount of the Judgment must be included as a liability of IFS.  Including the Judgment in the

16  solvency calculation, the Court concludes that IFS was insolvent at the time each of the transfers

17  was made, even if the adjustments to IFS' asset and liability values suggested by DC Media are

18  accepted.  Therefore, the issues of fact raised by DC Media with respect to IFS' assets and

19  liabilities are not material and DC Media has failed to rebut the presumption of insolvency.  IFS

20  is entitled to summary judgment on this element.

21         c.    Transfer One Would Allow DC Media to Receive More Than It Would in

22              a Hypothetical Liquidation But For the ORAP Lien.

23         Finally, a transfer is not preferential unless it enables the transferee creditor to receive

24  more than it would have received in a hypothetical chapter 7 case had the transfer not occurred.

25  11 U.S.C. § 547(b)(5); In re Smith's Home Furnishings, Inc., 265 F.3d 959, 963 (9th Cir. 2001);

26  In re Powerine Oil Co., 59 F.3d 969, 972 (9th Cir. 1995).  When placing a liquidation value on a

27  debtor's assets, courts assume the hypothetical distribution will occur on the petition date.

28  Palmer Clay Prods. Co. v. Brown, 297 U.S. 227, 229 (1936).

1    Section 547(b)(5) is sometimes called the "greater amount" test, which requires a court

2  "to construct a hypothetical chapter 7 case and determine what the creditor would have received

3  if the case had proceeded under chapter 7." In re LCO Enters., 12 F.3d 938, 941 (9th Cir. 1993).

4  "In making its determination, the court must decide the transferee's creditor class and determine

5  what distribution that class would have received had the transfer not been made." 2 Collier on

6  Bankruptcy ¶ 547.03[7] (16th ed. 2011).  For example, any payment to a general unsecured

7  creditor during the 90-day preference window would be preferential, because in a hypothetical

8  chapter 7, the unsecured creditor would have only received its chapter 7 distribution. See id.  In

9  contrast, because a fully-secured creditor will always receive payment in full on its claim in a

10  chapter 7 case, a payment to a fully-secured creditor would not be preferential.  In re World Fin.

11  Servs. Ctr., Inc., 78 B.R. 239, 241-42 (9th Cir. B.A.P. 1987).  However, a prepetition payment to

12  a fully-secured creditor may be preferential if the creditor's lien is avoidable in a chapter 7 case.

13  In re Jones, 226 F.3d 917, 921-22 (7th Cir. 2000).  In addition, "the mere act of perfecting a

14  security interest within the preference period has a preferential effect as it allows that creditor to

15  realize more than it otherwise would have in a liquidation under Chapter 7." In re Fox, 229 B.R.

16  160, 167 (Bankr. N.D. Ohio 1998).

17    Here, the filing of the Notice of Judgment Lien created and perfected DC Media's lien in

18  IFS' personal property, allowing DC Media to receive more than it would in a chapter 7

19  liquidation had DC Media's claim remained unsecured.  DC Media argues that IFS has failed to

20  meet its burden under section 547(b)(5) of producing sufficient evidence that DC Media would

21  be paid less than 100% of its allowable claims as a general unsecured creditor in a hypothetical

22  chapter 7 case.  However, the act of creating and perfecting the Judgment Lien, in and of itself,

23  means that DC Media will receive more than it would in a chapter 7 liquidation because the

24  Judgment Lien has elevated DC Media's payment status over all other unsecured creditors.  With

25  the Judgment Lien, DC Media will be paid before any payments are made to any other unsecured

26  creditors.  If DC Media had not received the Judgment Lien, it would share in any distributions

27  pro rata with other unsecured creditors.

28    DC Media also argues that the Judgment Lien does not allow DC Media to receive more

than it would in a chapter 7 liquidation because DC Media also has a lien in IFS' personal

property assets as a result of service of an Order for Appearance of Judgment Debtor ("ORAP

Lien"). Under California Code of Civil Procedure section 708.110(d), service of an Order for

Appearance of Judgment Debtor creates a lien in favor of the judgment creditor on the judgment

debtor's non-exempt assets. Cal. Civ. Proc. Code § 708.110(d). IFS filed a motion to amend the

Complaint in this adversary proceeding to avoid the ORAP Lien. At a hearing on this motion,

the Court granted the Motion to Amend. However, no order has as yet been entered. Until the

status of the ORAP Lien as a preferential transfer is determined, summary judgment may not be

granted as to this element.

        2.    <u>Transfer Three Is an Avoidable Transfer</u>.

        Transfer Three is the Sheriff's seizure on March 5, 2012, of $81,196.00 from IFS' Wells

Fargo bank account. These funds are still being held by the Sheriff and have not been turned

over to DC Media. DC Media does not contest IFS' challenge to Transfer Three. This transfer

also must be avoided as IFS has established each element of a preferential transfer under

section 547(b). Transfer Three was a transfer of an interest in IFS' property (the bank account

funds). Second, the Sheriff made its levy for the benefit of DC Media. Third, this transfer was

on account of an antecedent debt (the Judgment). Fourth, this transfer was made on March 5,

2012, within the 90-day preference window. IFS was insolvent at the time that Transfer Three

was made. Finally, DC Media's receipt of the funds held by the Sheriff would result in DC

Media receiving more than it would receive in a hypothetical chapter 7 liquidation as in a

chapter 7 case, such proceeds would be available for the benefit of all unsecured creditors.

        3.    <u>Transfer Two Is Not an Avoidable Preference</u>.

        DC Media asserts that Transfer Two, the Abstract of Judgment recorded with the Los

Angeles County Recorder on January 24, 2012, may not be avoided since the Debtor owns no

real property and therefore the transfer is less than the threshold minimum amount of $5,850 that

may be recovered as a preferential transfer under section 547(c)(9). DC Media recorded an

Abstract of Judgment with the Los Angeles County Recorder, pursuant to California law. Cal.

Civ. Proc. Code § 697.310(a). Recordation of an abstract of judgment creates a lien that attaches

1    to all of the debtor's real property interests in the county, and to any after-acquired property, for

2    the "amount required to satisfy the money judgment."  Cal. Civ. Proc. Code §§ 697.340(a)-(b),

3    697.350(a); SBAM Partners v. Cheng Miin Wang, 164 Cal. App. 4th 903, 907 (2008).

4         Under California law, a recorded abstract of judgment creates a lien only on real

5    property.  See Bagley v. Ward, 37 Cal. 121, 131 (1869) ("Our remarks are confined to real

6    property, as the judgment does not constitute a lien upon personal property."); Arnett v. Peterson,

7    15 Cal. App. 3d 170, 172-73 (1971) (affirming lower court holding that personal property was

8    not subject to lien created by a recorded abstract of judgment). the parties do not dispute that IFS

9    owned no real property in Los Angeles County on the date of recordation.  IFS still owns no real

10   property.  Moreover, under California law a lien cannot exist absent attachable property.  See E.

11   Bay Mun. Util. Dist. v. Garrison, 191 Cal. 680, 692 (1923); Gostin v. State Farm Ins. Co., 224

12   Cal. App. 2d 319, 325 (1964).  In In re Thomas, the bankruptcy court for the Eastern District of

13   California found that even when a judgment creditor properly recorded an abstract of judgment,

14   no judgment lien was created as a matter of law where a debtor had no attachable property as of

15   the petition date. 102 B.R. 199, 201 (Bankr. E.D. Cal. 1989).

16        Here, IFS did not own any real property in Los Angeles County on the date of

17   recordation or at any time from that date through the petition date.  IFS still owns no real

18   property.  Thus, DC Media's recordation of the abstract of judgment did not create or perfect a

19   lien, or otherwise affect IFS' property or an interest in IFS' real property—because IFS owned

20   no real property.  Thus, DC Media's act of recordation is not a transfer under the Code.  See 11

21   U.S.C. § 101(54).  Because DC Media's act is not a transfer, IFS cannot avoid this act under

22   section 547(b).

23        Therefore, IFS is not entitled to summary judgment as to Transfer Two.  Furthermore,

24   because Transfer Two is not a transfer under the Code, the court denies as moot summary

25   judgment on DC Media's section 547(c)(9) defense.

26   D.   DC Media Is Not Entitled to Summary Judgment on Its Second Affirmative Defense.

27        DC Media argues that it is entitled to partial summary judgment on its second affirmative

28   defense as to Transfer One, because the filing of the Notice of Judgment Lien occurred in the

ordinary course of business and according to ordinary business terms.  The court disagrees.

A creditor may defeat a preference action by establishing that the alleged preference falls within one of the exceptions listed in section 547(c).  The creditor bears the burden of proof of these defenses.  11 U.S.C. § 547(g).  Section 547(c)(2) provides creditors with an "ordinary course of business" defense to a preference action.  11 U.S.C. § 547(c)(2); see In re Healthcentral.com, 504 F.3d 775, 789 (9th Cir. 2007).  To prevail on this defense, the transferee must show that (1) the transfer was made "in payment of a debt incurred by the debtor in the ordinary course of business" and (2) that the payment was either "made in the ordinary course of business" or "made according to ordinary terms."  11 U.S.C. § 547(c)(2).

Here, DC Media argues that the recording of the Notice of Judgment Lien was "payment of a debt incurred" in the "ordinary course of business."  This argument fails.  A transfer in the form of a security interest is not the type of "payment" contemplated by section 547(c)(2).  See, e.g., In re Grand Chevrolet, Inc., 25 F.3d 728, 732 (9th Cir. 1994) ("A payment on a loan (whether secured or unsecured) is very different from a transfer of a security interest."); In re Four Winds Enters., Inc., 100 B.R. 24, 25 (Bankr. S.D. Cal. 1989) ("the [section 547(c)(2)] exception only applies to 'payment of ordinary trade credit.' . . . Indeed, the natural reading of the phrase in section 547(c)(2)(A) speaks of the 'payment of a debt incurred by the debtor in the ordinary course of business[.]'" (emphasis in original)).

Moreover, DC Media's unilateral act of recording its Notice of Judgment Lien "cannot be characterized as being within the ordinary course of business of both the debtor and the creditor as required by section 547(c)(2)."  In re Four Winds, 100 B.R at 25 (rejecting the application of the section 547(c)(2) defense to a transferee's belated recordation of its UCC-1 statement).  Thus, Transfer One is not a payment of a debt and the § 547(c)(2) defense does not apply.

Therefore, the Court denies summary judgment as to DC Media's second affirmative defense.

III.    CONCLUSION

In summary, the Court holds as follows:

With respect to Transfer One, DC Media is entitled to Summary Adjudication of the following issues:  (1) Transfer One was a transfer of an interest in IFS in property; (2) on account of the antecedent Judgment; (3) for the benefit of DC Media, creditor of IFS; (4) while IFS was insolvent.  IFS is not entitled to summary judgment on the issue of whether the transfer allowed DC Media to receive more than it would in a hypothetical liquidation under chapter 7 had the transfer not occurred, because of the existence of the ORAP Lien.

With respect to Transfer Two summary judgment is denied.

With respect to Transfer Three, the Court holds that the transfer is avoidable as a matter of law and IFS is entitled to summary judgment in its favor on Transfer Three.

Finally, DC Media is not entitled to summary judgment on its second and fifth affirmative defenses.

A separate order consistent with this memorandum of decision will be entered.

Date: March 6, 2013

Julia W. Brand
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:

**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.

**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.

**3)  Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.

**4)  Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief.  <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)  ***MEMORANDUM OF DECISION***  was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** B Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of ***03/06/13***, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

M Douglas Flahaut    flahaut.douglas@arentfox.com
Andy Kong    Kong.Andy@ArentFox.com
Aram Ordubegian    ordubegian.aram@arentfox.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Jeffrey J Williams    lojak@kodanilaw.com, lojak@kodanilaw.com

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

***Debtor***
Imagine Fulfillment Services, LLC
14245 Artesia Blvd
La Mirada, CA 90638

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                    **F 9021-1.1.NOTICE.ENTERED.ORDER**